# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) HOLLY DAVIS,<br>(2) LAURA STATEN,<br>　　　　Plaintiffs,<br>v.<br>(1) SOUTH PARK HEALTH CARE, LLC,<br>(2) MIDWEST GERIATRIC MANAGEMENT, LLC,<br>　　　　Defendants. | Case No. CIV-18-594-R |

## COMPLAINT

Plaintiffs, Holly Davis ("Davis") and Laura Staten ("Staten"), on behalf of themselves and all others similarly situated, (collectively, "Plaintiffs"), bring this cause of action against Defendants South Park Health Care, LLC and Defendant Midwest Geriatric Management, LLC (collectively, "Defendants") and states as follows:

### Parties

1. Defendant South Park Health Care, LLC is a limited liability company with its primary place of business in Oklahoma City, Oklahoma.

2. Defendant South Park Health Care, LLC also does business under the tradename of South Pointe Rehabilitation and Care Center. (Defendant South Park Health Care, LLC is hereinafter referred to as "South Pointe").

3. Defendant Midwest Geriatric Management, LLC is a limited liability company incorporated in the State of Missouri that does business in this Court's District in the State of Oklahoma.

4. Defendant Midwest Geriatric Management, LLC also does business under the tradename of MGM Healthcare. (Defendant Midwest Geriatric Management, LLC is hereinafter referred to as "MGM").

5. South Pointe owns and operates a facility at 5725 South Ross Avenue in Oklahoma City, Oklahoma 73119 ("Ross Facility").

6. Defendant MGM owns and operates multiple living centers that provide rehabilitation, skilled nursing, and long-term care in Iowa, Missouri, and Oklahoma, including the Ross Facility.

7. Defendant MGM has a management agreement with Defendant South Pointe where it assists in managing day-to-day operations of South Pointe, including employee personnel matters.

8. Plaintiff Davis is a citizen of the United States and resides in this Court's District.

9. Plaintiff Staten is a citizen of the United States and resides in this Court's District.

10. At all times relevant to this lawsuit, Plaintiffs were staffing coordinators, or performing the job responsibilities of a staffing coordinator, at MGM and South Pointe's healthcare facility at 5725 South Ross Avenue in Oklahoma City, Oklahoma 73119, within the three year period preceding the filing of this lawsuit.

11. Plaintiffs bring this case individually and on behalf of all others similarly situated for violations of the Fair Labor Standards Act ("FLSA") and individually for violations of the Oklahoma Protection of Labor Act ("OPLA"). 29 U.S.C. §§ 201–219. OKLA. STAT. tit. 40, § 165.1–165.9.

12. Plaintiffs consented in writing to be a part of this FLSA collective action pursuant to 29 U.S.C. § 216(b). Plaintiffs' signed consent forms are filed concurrently with this Complaint.

13. Plaintiffs bring this case individually and as an "opt-in" collective action under 29 U.S.C. § 216(b) on behalf of all those who file a consent to join form with the Court.

14. Defendants employ many individual employees as Staffing Coordinators at any given period of time.

15. The number and identities of potential opt-in Plaintiffs may be easily determined from Defendants' records.

## Jurisdiction and Venue

16. The FLSA authorizes court actions by private parties to recover damages for violation of the wage and hour provisions contained within the FLSA. Jurisdiction over Plaintiffs' FLSA claims is based upon 29 U.S.C. § 216 and 28 U.S.C. § 1331.

17. The OPLA authorizes court actions by private parties to recover for violations of wage and hour provisions contained within the OPLA.

Jurisdiction over Plaintiffs' claims under the OPLA is based upon 28 U.S.C. § 1367 and OKLA. STAT. tit. 40 § 165.9.

18. At all times material to this action, South Pointe and MGM were the "employer" of Plaintiffs and those similarly situated within the meaning of 29 U.S.C. § 203(d) and OKLA. STAT. tit. 40, § 165.1.

19. At all times material to this action, Plaintiffs and those similarly situated are and/or have been "employees" of South Pointe and MGM as defined by 29 U.S.C. § 203(e)(1) and OKLA. STAT. tit. 40, § 165.1(2), and worked for Defendants within the territory of the United States within three (3) years preceding the filing of this lawsuit.

20. Plaintiffs and those similarly situated are or were non-exempt employees, within the meaning of the FLSA.

21. At all times material to this action, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1) of the FLSA, with annual revenue in excess of $500,000.00. At all times material to this action, Defendants have been engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 201(s)(1)(B).

22. Venue in this Court is proper under 28 U.S.C. § 1391(b) because the occurrences in question substantially occurred in this District, the named Plaintiffs resides in this District, and Defendants are located in this District.

**Factual Allegations**

*General Work Duties*

23. Plaintiffs and those similarly situated are current or former employees of Defendants who performed Staffing Coordinator ("SC") related work duties.

24. These SCs served as employees who primarily performed scheduled work at their assigned facilities; however, the SCs performed numerous hours each week of "on-call" work away from the facility.

25. SCs are required to maintain a current listing of all resident care employee phone numbers; maintain daily tardy and absenteeism calendars; work with human resources and DON when scheduling modified work duty employees in accordance with work restrictions and facility policy; complete in timely fashion necessary nursing department employee records upon hiring, job reclassification, and discharge; assist employees in accurate completion of forms pertinent to scheduling and staffing; complete monthly nursing schedule coordinating requests to ensure appropriate coverage of units; complete and post work sheets/time schedules; and accept other duties as assigned.

26. SCs were and are required to take an office phone home with them to perform work from home, which includes fielding calls on a 24 hour basis from employees who need assistance, such as rescheduling shifts and notifying the facility of absences.

27. After receiving calls at home from employees who are going to be absent, SCs are required to contact the facility and other employees to try and find coverage for the absent employees' shift.
28. To facilitate the work-at-home arrangement while on-call, Defendants provided SCs with equipment necessary to work from home.

*Compensation*

29. Defendants compensated SCs based on hours worked at the facility.
30. SCs are paid on a per-hour basis, with pay rates that vary.
31. Plaintiff Davis was paid on a per-hour basis at the rate of $17.00 per hour while performing work at the facility.
32. Plaintiff Staten was paid on a per-hour basis at the rate of $13.00 to $13.50 per hour while performing work at the assigned facility.
33. SCs are required to use a timeclock to record hours while at the facility.
34. SCs are not required to use a timeclock to record hours worked while not at the facility.
35. Defendant did not record or maintain accurate records of hours worked by SCs for purposes of compensation while not at the facility. In failing to do so, Defendants failed to satisfy their duties as an employer under the FLSA.
36. Defendants informed SCs that they will not be compensated for hours worked away from the facility.

37. When SCs perform work away from the facility, Defendants do not compensate SCs for those hours worked.

### *Defendants' Knowledge of Time Worked by SCs*

38. Defendants were aware that SCs performed uncompensated work away from the facility.

39. Plaintiffs commonly would send out text messages and make phone calls to Defendants while away from the facility.

40. Defendants required Plaintiffs to carry a company phone to work from home.

41. Defendants were aware that SCs routinely worked away from the facility off the clock to ensure the SCs job responsibilities were satisfied.

42. Plaintiffs regularly made complaints to Defendants or requested information about compensation for on-call activities.

43. Defendants made active efforts to misinform SCs of their rights and to conceal known violations, thereby justifying equitable tolling of the statute of limitations.

44. If SCs did not answer the company phone, Defendants instructed its employees to contact SCs personal phone.

## Collective Action Allegations

45. Plaintiffs, individually and on behalf of other similarly situated SC employees of Defendants, seek relief on a collective basis based on Defendants' failure to provide premium pay for all hours worked in

excess of forty (40) per workweek during at least one (1) workweek over the past (3) years.

46. Defendants require SCs to perform the same job duties and tasks, subject to the same unpaid on-call requirements.

47. Defendants compensated SCs based on the same pay policy and criteria (*i.e.* hourly pay for hours worked at the facility; no pay or compensation for hours worked away from the facility).

48. Defendants established a common plan or policy to not pay overtime premiums to SCs, who Defendants knew to be non-exempt employees that were performing uncompensated work.

49. Defendants established a common plan or policy to not track, or maintain accurate records of, hours worked by SCs, who Defendants knew to be non-exempt employees.

**Count I: (Failure to Pay Overtime in Violation of the FLSA)**

50. Plaintiffs hereby incorporate and re-allege, in full, all preceding paragraphs of this Complaint.

51. At all times relevant herein, Plaintiffs and similarly situated employees was entitled to the rights, protections, and benefits provided under the FLSA.

52. The FLSA requires employers to pay non-exempt employees one and one-half times the regular rate of pay at which they are employed for hours worked in excess of forty per workweek. 29 U.S.C. § 207.

53. Defendants failed to pay Plaintiffs and those similarly situated overtime compensation at the statutorily prescribed rate of one-and-one-half times the regular rate of pay for all hours worked in excess of forty per workweek—specifically those hours worked while on-call at home.
54. Plaintiffs and those similarly situated are entitled to an award of liquidated damages. Defendants will not be able to meet their burden of proving that it acted in good faith and with objectively reasonable grounds for believing that its conduct was not in violation of the FLSA.
55. Defendants' violations of the FLSA as stated herein are willful violations resulting in a three-year statute of limitations as Defendants knew, or showed reckless disregard for whether, their conduct violated the FLSA specific to Plaintiffs and those similarly situated.
56. Defendants violated the FLSA by failing to keep accurate records of all time worked by, and wages and wage adjustments paid to Plaintiffs and those similarly situated.
57. Defendants are liable under the FLSA for unpaid overtime, liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees, court costs and litigation costs.

WHEREFORE Plaintiffs and those similarly situated seek relief and judgment against Defendants, as follows: notice of this action to be

provided to all similarly situated persons as a collective action under the FLSA; judgment against Defendants for violation of the FLSA; an award of unpaid wages; incentive payment to the representative Plaintiffs; determination that Defendants' FLSA violations were willful; an award of liquidated damages against Defendants; pre-judgment and post-judgment interest as provided by law; an award of reasonable attorneys' fees, court costs, and litigation costs; and for such other and further relief as the Court deems just and proper.

## Count II: (Failure to Pay Wages for Hours Worked in Violation of the Oklahoma Protection of Labor Act)

58. Plaintiffs hereby incorporates and re-alleges, in full, all preceding paragraphs of this Complaint.
59. At all times relevant herein, Plaintiffs were entitled to the rights, protections, and benefits provided under the OPLA.
60. The OPLA requires employers to pay its employees their agreed-upon hourly rate for all hours worked.
61. South Pointe and MGM failed to pay Plaintiffs for all of their hours worked. More specifically, South Pointe and MGM did not pay Plaintiffs for all hours worked away from the Ross Facility.
62. Plaintiffs are entitled to an award to recover their unpaid wages and liquidated damages. South Pointe and MGM's violations of the OPLA were willful.

63. South Pointe and MGM are liable under the OPLA for unpaid wages, liquidated damages, pre- and post-judgment interest, reasonable attorney's fees, court costs and litigation costs.

64. Plaintiffs acknowledges that *some* damages between the OPLA and FLSA may overlap in actual damages. Plaintiffs do not seek double recovery under both the OPLA and FLSA *for actual damages*. Plaintiffs, however, are entitled to liquidated damages under the OPLA, in addition to those under the FLSA, as the Tenth Circuit has held that liquidated damages under the FLSA are compensatory and can be awarded *in addition* to liquidated damages under the OPLA, which are considered punitive in nature.

WHEREFORE Plaintiffs seek relief and judgment against South Pointe and MGM as follows: judgment against South Pointe and MGM for violation of the OPLA; an award of unpaid wages; determination that South Pointe and MGM's OPLA violations were willful; an award of liquidated damages against South Pointe and MGM; pre-judgment and post-judgment interest as provided by law; an award of reasonable attorneys' fees, court costs, and litigation costs; and for such other and further relief as the Court deems just and proper.

### Count III: (Race Discrimination—42 U.S.C. § 1981)[1]

65. Plaintiff Staten hereby incorporates and re-alleges, in full, all preceding paragraphs of this Complaint.

---

[1] Plaintiff Staten has filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging violations of Title VII.

66. At all times relevant herein, Plaintiff Staten was entitled to the rights, protections, and benefits provided under 42 U.S.C. § 1981.

67. Plaintiff Staten is an adult, African-American female.

68. Plaintiff was hired in or around October 2017 and was employed with Defendants as a staffing coordinator until in or around May 2018.

69. Plaintiff was hired at the pay rate of $13.00 per hour and subsequently received a raise to $13.50 per hour.

70. Non African-American employees that performed substantially the same or similar job functions as Plaintiff Staten received starting pay in the range of $16.00 to $19.00 per hour.

WHEREFORE Plaintiff Staten seeks relief and judgment against Defendants as follows: judgment against Defendants for violation of 42 U.S.C. § 1981; an award of lost wages (front and back pay); determination that Defendant's violations of 42 U.S.C. § 1981 were willful; an award of compensatory and punitive damages; pre-judgment and post-judgment interest as provided by law; an award of reasonable attorneys' fees, court costs, and litigation costs; and for such other and further relief as the Court deems just and proper.

### Demand for Jury Trial

Plaintiffs demand a jury trial on all claims presented herein.

---

Upon receipt of the Right to Sue, Plaintiff Staten anticipates amending this Complaint to include the Title VII cause of action.

Respectfully submitted,

s/ D. Colby Addison
D. Colby Addison, OBA #32718
Leah M. Roper, OBA #32107
LAIRD HAMMONS LAIRD, PLLC
1332 SW 89th Street
Oklahoma City, OK 73159
Telephone: 405.703.4567
Facsimile:  405.703.4067
E-mail: colby@lhllaw.com
E-mail: leah@lhllaw.com
ATTORNEYS FOR PLAINTIFF